May it please the Court, good morning. It's a pleasure to be here. I represent the Appellant Steven Hartman. At the outset, I want to make one thing clear. Defendant James Macon, I never asserted any Federal claims against him. I know he filed as the appellee, but only State law claims were presented against him. We are here to... Say his name again. I'm... Macon, Your Honor. It's kind of hard to sort all these out. You sued, what, 20-something people? Yes, sir, I did. Yes. What's his name? James Macon, M-A-K-I-N. He filed an appellee's brief. I did not assert any Federal claims against him, because he's a private sector attorney. Should I proceed? Okay, thank you. Your Honor, I take it that the Court is familiar with the facts of this case. My theme here is that the trial court did not correctly apply the Rule 12b-6 standard of review. If you read the two magistrates' reports and recommendations, they are very clear that the Court is weighing the facts and adjudicating the facts, which is not permissible in a Rule 12b-6 proceeding. The most analogous case that I can find to this one is the U.S. Supreme Court case of Toller v. Cotton, coming out of the Fifth Circuit in 2014, where the Supreme Court ruled that in a summary judgment proceeding under Rule 56, the facts have to be viewed in the light most favorable to the plaintiff, and all inferences have to be drawn in favor of the plaintiff. In this case, it is abundantly clear that did not occur. I can — the only way to do this is to go through specific examples. What I've alleged in this case is that the was a conspiracy to wrongfully arrest Mr. Hartman and maliciously prosecuted him. In both my second and third complaints, I pleaded — excuse me — all the elements of a civil conspiracy, and I also pleaded constitutional violations so that my civil — so that the malicious prosecution claim was being brought alongside a Section 1983 claim. The first constitutional violation I pleaded was a wrongful arrest. The trial court looked at the evidence. The evidence consists primarily of an audio pen that my client was wearing. The audio pen reflects very clearly that he walked up to the courtroom's bar, but he did not pass it. He motioned to a bailiff and whispered, I have to perform service, serve a civil summons upon Judge Walker. That's paragraph 33's alleged facts. Yes, Your Honor. Yes. But why isn't that alone in the middle of an ongoing proceeding, walking up to the bar of the court, summoning a bailiff, and then talking in whatever tone? If you're then told we have to do this outside, and the person says, no, sir, or you — whatever the pen recorder reflected, that the gentleman said, you cannot — you can't not allow me, why isn't that a violation of either Texas 3813 or 4205? Because, Your Honor, Mr. Hartman's voice was not audible anywhere in the courtroom except — except to — may I finish? Yes. Until Bruce Hart charged and arrested him. The Tanner audio tape and the Tanner's reporter's record demonstrates clearly there is nothing taken down as coming from the process and begun putting the cuffs on him. That's the first time he spoke. Now — Now see what elements it doesn't reach when you have admitted in paragraph three, walk in the door, you come up, you summon the bailiff over there, and then whispering, talking, whatever level of volume, and then the bailiff says, this is happening outside the courtroom, and the answer is no, sir. The problem, Your Honor, is that they falsified their reports. Respectfully, the case law is abundantly clear. But those are your facts. That's paragraph 33. So we — even if we do the Franks v. Delaware, carve out all the alleged falsifications, we are still left with the irreducible core that meets the elements of what they charged you with. That's — disagree with me, obviously, because — I respectfully do disagree with you, and I can explain why. Yeah. I believe, and I can — if you want, I can cite the cases. Yeah. Franks v. Delaware is one, and I cited them in back — No, but Franks says carve out anything. I'm saying carve it all out except for your facts in paragraph 33 and the undisputable pen recorder, your client's own recorder, saying he refused to leave. Because, Your Honor, unless I'm mistaken under the case law — Yeah. Once — let's assume that you're right, okay, and that they had probable cause to arrest him. Yes. But the fact is, they clearly, clearly falsified their arrest reports. My reading of the case law from Supreme Court on down is falsification of arrest report negates probable cause, whether it's a terminator-type argument where if you had it at the time — But, Art, while you tell me what the case law is, I thought in Hale v. Fish cited in your brief at page 40, it's a clearly critical test. In other words, we carve it all out. That's the cancerous material. Put it aside, Franks v. Delaware, but you still are left with undisputed facts that this State misdemeanor disruption offense occurred. The disruption that he was charged with was disrupting court proceedings via noise. Yeah. That's the 3813, but, okay, you can help me there. That's Texas law. Why does that matter? I agree. I noticed that incongruity, 3813 v. 4205. Theoretically, they could have charged him with resisting arrest or some other charge. They charged one, hindering a court proceeding via noise. And this is why it's important. The whisper is important. That's why the whisper is important. Right. There's no audible noise. Well, you started to whisper there. Okay. Yeah. And that's what it comes down to. I mean, certainly I can go through the penal code and think of other misdemeanors he may or may not have done. No. But when they say disruption via noise, a whisper, you have to say when was there noise. The noise occurred during the arrest process. That is abundantly clear through the facts. I mean, you can look at the video, the audio tape. It's even on YouTube. And you can listen to the Tanner record and the reporter's record where she types it out. How many video audios are there in the record? There's his pen recorder. There's the cell phone was recording this also? Not that I'm aware of. Okay. So how many are there? There's the — There is his video pen recorder, which shows him approaching the bar. He had that activated in court. There's no Texas policy against that? That's correct. Okay. That's lawful, unless the local rule prohibits it. But there's no penal code violation. The only other recording was the court reporter, Summer Tanner, whom I have not sued in this case. A couple others, Your Honor, some people who gave affidavits I did not join for conflict reasons. But the point was this. Summer Tanner, as a court reporter, is required to record the audio. Centigraphically. Centigraphically. And then she's able to — she can erase it after she checks to make sure that what she typed was accurate. And there's no noise from Hartman until the rest is occurring. And at that time, Bruce Hart's hands were on Hartman. And that's clear in the reporter's record. I cited it and I included that. And those are the only two recordings that were in the courtroom at the time? That's correct. The court recording and your client's little pen. That's correct. That's correct. Okay. So that's why I take the position of no matter what he did was right or wrong, he could not have disrupted the court proceeding via noise until the time the arrest occurred. And the charge was you can't arrest — you can't say you — But he doesn't dispute that he called the bailiff over and he made a very clear when can I serve this. So he's speaking in court. Yes, but it's not audible. So — He's speaking, but it's not audible. Okay. It's audible to the bailiff. It wasn't audible. He was there to protect the judge and help with the court proceeding, not to be answering questions from some stranger who comes walking in during a court proceeding up to the bar. I understand that, Your Honor. But one thing is very important on the video pen. Which he had running, so he obviously wanted it on the record. Yes. It's a custom of that particular process server business. He was an employee. If I may point this out, it's very important. If you look at the video, Judge Walker has a DA in front of him, has a defense lawyer, has a defendant. It's conducting business. There's no disruption. He's disrupting the bailiff. Doesn't disrupt the court. The bailiff is part of the court staff there. The bailiff's there to engage in court functions, not to be having to talk to some stranger who's up there to serve a judge. I mean, I understand — When you look at the pen recorder — What claims do you have that aren't derivative of your 1983 false arrest? If we found that there was probable cause for these disruption offenses, what claims would you have still before us other than that? Or are they all a deck of cards? No, Your Honor, because they hired an illegal special prosecutor. Okay? And Judge Walker and Judge Flores hired an illegal DAPT, District Attorney Pro Temp. They didn't comply with any paperwork. So the prosecution of Mr. Hartman was illegal. Tom Maness, the district attorney, didn't lawfully disqualify himself under Article 2.07. I set forth this, okay? And that goes to which alleged constitutional violation? That goes to, okay, the malicious prosecution. There's also, as part of the malicious prosecution, and I am answering your question, the affidavit, the falsified search warrant for the search — the falsified affidavit for the search warrant to have the police look at the pen when they had thought they had already erased the evidence. Okay? So those are completely independent. The DAPT — Is it your best case from our court that you can pursue a malicious prosecution 1983 case even if there is probable cause underlying the crime alleged? Is there one? No, Your Honor. And I think the reason is because I could not find anything — and I did look for this — to say you could pursue a prosecution with an illegal prosecutor. Counsel for Mr. Alford? Well, your excessive force case based on the handcuffed bruising, but that runs into a separate difficult line of authority from our court, doesn't it? I disagree with that, Your Honor, because certainly, I allege, and the facts show more than just a de minimis injury. There was bruising. There was marks. There was what clearly could be objectively looked at as deliberate cruelty. If there was one set of progressively tightening handcuffs, one could easily say that would be a mistake. Two sets is almost impossible. All three sets to progressively tighten, that appears to be deliberate cruelty. Also, when you have a man who's in the holding cell for approximately seven and a half hours and not allowed anything to drink, that appears to be deliberate cruelty because he was in cuffs, those progressively tightening cuffs, for 30 minutes. He did not know how long he was going to be there. Certainly, his testimony, if discovery was allowed, is going to be he was very frightened. He didn't know if he was going to have permanent injuries as a result of his hands. He just didn't know. They weren't telling him. So I believe that's also independent. But to go back to the whether or not there's probable cause for the arrest, one of the biggest problems they have here is it was an illegal prosecution. And because it's illegal, that renders it malicious on its face. And your best authority from any circuit for that statement is what? I couldn't find a case where illegal prosecution was justified. However, I know I cited some cases in here, Your Honor. If I may, during rebuttal, can I look at that question? Certainly. It's great. Yeah, okay. Because I know that I cited some cases stating that. And what's important here is that there was no attempt to even come up with the documentation until we filed the motion. And Judge Johnson, the trial judge, was in a situation, well, there's absolutely nothing he can do except dismiss the case. There was no authority for the prosecution. So I believe that the pre-trial cruelty, the detention of the 14th Amendment, springing from the 8th Amendment, is viable. Certainly the constitutional violation related to the search warrant affidavit. In both the second complaint and the third complaint, I pleaded all the facts which were omitted from the search warrants, which I believe this Court's decision in Kohler v. Englade requires the Court to put back in. Now, what I'm suggesting, Your Honor, is that this is a case where there were findings of qualified immunity, and this Court ruled in Bakke in 2012 that I can't take discovery absent permission from the Court. And I understood that, so I didn't do that. But what I'm suggesting is, overall, that the standard of review was drawn way to all the evidence was indulged in favor of the defendants. At a minimum, a case as complex as this, with as many potential constitutional violations, I think it warrants discovery, because the standard is not, under Isball and Twombly, is not proof. It's plausibility based upon the factual analysis. In my last 23 seconds, is there an answer, a question I can answer for the Your Honors? I will look for that case during my rebuttal. I appreciate your time. Thank you, Judge. You may proceed. Good afternoon. I'm Kathleen Kennedy. I represent about 20 defendants in this case. I just want to touch on a couple of things that Mr. Hartman's attorney did. First thing, regarding the discovery, the trial court made it very clear that the only person or the only party that filed a motion to abate any discovery was Defendant Judge Walker. I did not file a motion to abate any of the discovery in this case. Even if I did, it wouldn't apply to Jefferson County. In that regards, Mr. Hartman's attorney did not ask for any type of limited discovery to any of the immunity defenses that were ever asserted. Since he never asked for discovery, he wasn't prevented, since there was no motion to abate by my 20 defendants, I don't think he should be able to claim it now. In looking at some of his responses to the 12B6, he doesn't ever ask for limited discovery. He basically asked for general discovery. One thing that's really important, I know from the record that you all have, it's just a very large electronic file, but what he was serving on the defendants was not only the petition, but many, many, many exhibits. And under the Federal Rules 8, if it's attached to his petition, it is part of the pleadings. And all of these exhibits included the probable cause affidavits by all the deputies, Deputy Broussard, Deputy Lewis, Deputy Barker. It includes affidavit from his own client. It includes all the witness affidavits. It includes the law. Many, many, many things that give the trial court the right to look at as well. And because it's part of the complaint, it is, these exhibits are part of the complaint, the trial judge is able to look at that, and the trial judge did look at that, especially in the affidavits. He actually, in the recommendation in order, actually compared all the probable cause affidavits, and basically, and looked at it to the pin video. And the pin video is probably the most important piece of evidence that was attached to the complaint, because we can actually see what actually transpired. And the questions that this court posed to opposing counsel is extremely important, because a disturbance doesn't have to be just noise. Now, Judge Walker was in the middle of not the first or the second probation revocation. He waited until the third probation revocation to stand up from this side of the courtroom. He was on the left side. If you look at the pin video, there was an opening in the bar right there. He chooses not to go to that opening of the bar to try to motion to a bailiff. He also doesn't motion to the bailiffs before court starts. From the video, he gets up, and according to Deputy Lewis, which is the female bailiff that originally approached him, her probable cause affidavit, she states she sees him get up, and as he's walking, he's eyeing Judge Walker, as he's walking to the opposite end of the bar. At that point, she believes he's going to approach the bench, and she then approaches him. And everything that Mr. Hartman says is completely audible on the pin video. He tells her. He doesn't whisper. He says it in whatever tone of voice. He doesn't ask for a break time. He basically says, I'm here to serve process on the judge. She goes back to Deputy Broussard, and you can see, not once, not twice, but three times as Deputy Broussard is walking towards him. He's motioning for him to either sit or leave. You can't tell from this type of movement. But he's giving Mr. Hartman time to make a decision to do something. Now, I understand their argument is there's no noise. But at this time, there is a felony probation revocation occurring. Chances are probably 99.99% that this person is going to prison. At this point, the bailiffs have no idea who this person is. Is he a family member? Is he a victim? We don't know who he is. So it's obviously justified that the deputies wanted to stop what was happening and find out what's going on. They tried to write me to the situation. Only, unfortunately, Mr. Hartman objected not once, not twice, but three times. I'm here. You can't not let me. No, sir. And he refuses to leave. All of that is what's considered a disturbance. But how do you respond to the claim that he wasn't sued for disturbance, he was sued for noise? I mean, not sued, but indicted or charged with noise violation as opposed to some other violation. At the time of the disturbance, and under 42.05, disturbance is an element for disrupting a legal proceeding. Now, at that time, the deputies, and they drafted their probable cause affidavit on that disturbance, not a noise but a disturbance. Now, the fact that he was not charged with that crime I think is kind of irrelevant because as long as the deputies believe that they had probable cause for the arrest, then they're still entitled to qualified immunity, regardless if the prosecutor chose that crime to charge him with or a completely different charge. What's the best Texas case, just one, for each of the two crimes, so we can see the elements? What's the best case on 38.13 elements as distinct from 42.05? Are they very, very common? I mean, what? Common as in? In other words, I assume there's case law, and it would shed light on why he was charged with 38.13, but the brief perceives there to be probable cause for 42.05. I guess you could make an argument for both. I didn't research those two elements to argue before today. What you're saying is, am I right, you remember the complaint, paragraph 33 is the one that admits to facts, and you're saying the facts he's admitted to with the pen recorder or without it suffice to prove probable cause as to 42.05, or you don't want to? They would suffice to 42.05, but the fact that the officers have probable cause at that point for a disturbance in the courtroom, they do have probable cause for the arrest. And because they would have probable cause for the arrest, that probable cause negates several other claims that Mr. Hartman makes. And I can go through them unless someone has questions. Okay. So with there being an actual disturbance in the courtroom, which got the bailiff's attention, it got everyone's attention, people sitting in the jury box, it did stop the court, and there is the transcript from Ms. Tanner where on the last page, I believe, in the exhibit, it basically shows where the court stopped. The court is asking what's going on, and once everything happens, the court then says, let us resume from this interruption. So it does stop the proceeding. The falsified probable cause affidavit, Mr. Hartman doesn't exactly say how it's false. Basically, because there's probable cause for the arrest, they're not false. The trial court found that they weren't falsified. Minor inconsistencies can be from memory. Nobody can remember verbatim something that happened. Whether someone says whisper or spoke, you've got different scenes of words that have some leniency. There's no falsified affidavits in here. Mr. Hartman does talk about an illegal special prosecutor that doesn't give rise to a 1983 malicious prosecution claim. At best, his malicious prosecution claim is a state law tort, but Mr. Alford's attorney is here who can address that. He talks about Manus again, whether Manus did or did not formally recuse himself in order to have Mr. Alford appointed by Judge Flores. Again, that wouldn't give rise to a 1983 claim. Again, at best, it would be a state law tort. The excessive force claim that was asked of my opposing counsel, I think maybe some of the way it's described is a little maybe confusing. Mr. Hartman is a very large man, and according to Mr. Barker's probable cause affidavit, which is attached as exhibits to the complaints, he not only is a large man, but he has very large wrists, so what they had to do was use three sets of cuffs to make one long set of cuffs, not just stacking them on top of his arm. So there was only one cuff on each arm, but they connected to each other. Right, because he's too large to get his arms behind his back. Mr. Barker's probable cause affidavit, which is actually a supplement to the report. It's attached to the second amended complaint. It goes through that, that he's a large man, he's got large wrists, so they had to use multiple cuffs. About 30 minutes has passed, and Mr. Hartman says that they're hurting. Upon that complaint, he takes them off and puts one large set of cuffs on him and then asks him, are you okay? And he replies yes, or he says, you know, is there still a problem? Anyway, he specifically asks Mr. Hartman if he's okay, and Mr. Hartman replies yes. He also complains that he wasn't given anything to drink during, I think it was about five, five-and-a-half hours, that he's being detained behind the court. He's given a sack lunch. He is basically given an early dinner, which he refuses. There's not a detention problem here or a confinement. There's other inmates coming in who are restrained. Mr. Hartman is restrained. He's treated the same as the other inmates that are coming in. He doesn't argue anything to where he's treated any differently or has any other excessive force against him. Any other questions? Yes, what's in the record as to why he was allowed to go out and serve the judge? That I don't know. At some point, I think whenever he had reference to the deputies, and I'm only basically gleaming this from the facts. I don't want you to gleam it from. That basically at the time maybe when they finished the morning docket and in between the afternoon docket is when Judge Walker got off the bench and went in there and allowed him to serve him with the papers. That's what I gleam from it because it seems to say that there's some point that he's still in there after he serves him and the afternoon inmates come in. Does that answer your question? Thank you, counsel. Thank you very much. Mr. Johnson on behalf of Judge Walker. You may. May it please the court. My name is Andrew Johnson. I'm here on behalf of the athlete, Judge Walker. Real quickly to address points that opposing counsel made, as far as the illegal prosecution claims go, there is no constitutional violation pled on that. There can't be a 1983 claim based on that. You can't base a 1983 claim on state court violations. The illegal prosecution wrongfully filling out documents, all that's based on state violations. Therefore, there's no federal question there. Ms. Kennedy for co-defendants is absolutely right. I think this case really boils down to the fact that they attached the pen recording to their petition or to their complaint. The pen recording clearly shows what it shows. He went up. In my brief, we point out my observation of the video, that when he's up there, when he's making this disruption, which is a violation of 42.05, people in the courtroom are turning around. I guess attorneys waiting for their turn in court in the jury box are turning around once Officer Broussard approaches. This is a disturbance in the court. This is causing people in the courtroom to turn around, what's going on. So this clearly violates 42.05. He's asked multiple times, told multiple times, leave, leave, leave. He doesn't. If an officer tells me to leave a courtroom, you leave the courtroom. He didn't. He stood his ground. At that point under 42.05, he reasonably anticipated, could have reasonably anticipated what was going to happen next, and that was he going to be arrested. But more to the point on my client, Judge Walker, and to his credit. He's not a judge, is he? He's not a judge. That's correct, Your Honor. Mr. Walker. Mr. Walker. Yes, Your Honor. To counsel's credit, he does say in footnote 3 of his reply brief that he agrees, he concedes that Judge Walker, that Mr. Walker had judicial immunity to effect this arrest in this courtroom. So I think as far as the arrest goes, as far as my client goes, counsel's conceded judicial immunity. I think that's a moot point. Moving on, and I don't want to waste the Court's time, just real quickly. As far as the illegal 14th Amendment privacy interest in the cell phone claim is concerned, you know, qualified immunity clearly exists in this case. At the time under the Rodriguez case from this circuit, once someone's arrested, their cell phone could be searched as a reasonable right incident to arrest. Therefore, under the first prong of qualified immunity, there was no constitutional right that was violated. Therefore, the cell phone search, there's no violation. There's no constitutional violation. Moving on. Equal protection claim. In his brief, the only thing that opposing counsel argues as far as equal protection goes is that we violated his rights by arresting him when we wouldn't have arrested someone similarly situated. There's probable cause to arrest him here. You know, the video camera is eminently clear there's probable cause. Therefore, there was a rational basis to arrest him here. There's no equal protection violation. So that constitutional claim is done away with. My client is not. There's no claim, and this is, you know, multiple times asserted in the record. There's no claim for excessive force asserted against Judge Walker. Therefore, the constitutional violations are allegations based on that. There's none against my client. And finally, as far as the perjured search warrant affidavit goes, I think Judge Hawthorne in his recommendation, you know, sets it out very clearly that even if the information that opposing counsel says was left out, perjurously left out of the search warrant affidavit is put into the search warrant, it doesn't matter. There's still probable cause. And even so, more so, Judge Hawthorne says that if this perjured affidavit, left out information is injected into the search warrant, it may give additional grounds for why probable cause that a crime occurred exists. Therefore, giving the Beaumont Police Department, you know, or I guess the judge probable cause to issue the search warrant to go and see, let's see what's on this pen because there seems to be a lot of allegations of wrongdoing surrounding, you know, what happened with this pen. Every court in Texas has its own electronic device policy? I'm not going to represent whatever. I was asking as an officer of the court, what's your experience? People can walk in with these pens that are video recording everything? I wouldn't do it. My experience, I've never walked into a court with a secret pen, so I'm not really sure. But you don't know of an electronic device policy? Right. Some courts do, absolutely do, especially, you know, in a high-profile case, you know, the courts will say, they'll post on the courtroom door, no press whatsoever, no recording devices in. Jurors call for it to close the courtroom? There's just a lot of considerations. There absolutely is, Your Honor, and, you know, I understand your concern on that. If there's not any additional questions, we ask that you affirm the judgment of the court below. Thank you very much. Thank you, Your Honor. Is that Mr. Calvert on behalf of Joe Alford? Good morning, Your Honors. Frank Calvert on behalf of, I believe, Joe Alford. He was the district attorney pro tem that was appointed in this matter, and I asked for just a brief minute of your time in the argument in order to point out one important factor. The plaintiff or the appellant alleges that he was an illegal prosecutor. The Texas courts that we've cited in our brief have consistently held that the requirements under Code of Criminal Procedure 2.07 are not fundamental rights, but it's merely a procedural process. What happened here was he was asked to be the district attorney asked for district attorney pro tem to be appointed. Judge Flores entered an order authorizing that, sent to Mr. Alford an oath. Mr. Alford signed the oath and sent it back. For some reason, Judge Flores did not file the oath. The Texas cases that we've cited in our brief consistently show that his conduct as a prosecutor is voidable, but it's not void. Your time has expired. Okay. Thank you, Your Honor. Thank you very much. Rebuttal. Yes, Your Honor. If I may first answer Justice Higginson's question. Judge, I'm sorry. I apologize. Your Honor, the two Fifth Circuit cases I'm relying upon are Carr v. Montgomery County. I've cited that in Castellano for the issue of can you have malicious prosecution. Nineteen eighty-three claims brought alongside malicious prosecution. I believe in Castellano, the Fifth Circuit, the test is whether a constitutional violation is part of the overt acts forming the malicious prosecution. A few other points I'd like to make, unless you have any other questions on that regard. The dismissal of the prosecution as illegal could have been appealed. It was not appealed. It could have been appealed to the state courts. That's a res judicata issue. The prosecution was dismissed as illegal and was not appealed. You can't come back now and say, well, there's an argument to say it was legal. On the issue of Bakke and requesting discovery, the Bakke decision, if I recall it correctly, states that the trial court has to fashion discovery. It's not up to me to do so. But I did. In every single motion to dismiss opposition for a defendant who asserted qualified immunity, I cited Bakke and I requested a right to take that person's deposition on the facts related to the qualified immunity defense. I certainly made that allegation, and I went through that. You asserted a right to take a deposition. No, I requested. I apologize. If I said asserted, that's wrong. I did. I'm sure you didn't. I'm sure I did. I'm not the best speaker in public sometimes. But I did ask. I asked in all of my oppositions to take a deposition on those issues related to qualified immunity. And I respectfully submit under Bakke the trial court erred in that regard. Another thing is the excessive force. I disagree with Ms. Kennedy's version of the facts. She's an excellent lawyer. I just disagree with her. My client will testify that all three were on him. The idea that three were needed, the justification post hoc. No, he would testify, Your Honor, on that issue. He has not testified. But the three handcuffs were on him. I wondered why you said he testified. I misspoke. You're saying his complaint says all three sets of handcuffs were on his wrist. That's correct. All right. That's correct. And set to progressively tighten. And under the DeVille v. Marcantel case of Fifth Circuit 2009, a cruel treatment excessive force claim is a fact-intensive inquiry. This Court has recognized that. And that should also warrant discovery. A few other things pertaining to the fundamental issue that Your Honor has raised, whether he disturbed the court proceeding via noise. Okay. I submit if you look at the audio pen evidence, it shows that nobody is looking at Hartman, because you can see forward where Judge Walker was, Judge Walker at the time. Nobody was looking when he whispers to the bailiff, Williams. The only time he becomes a center of attention is during the arrest process. If the argument is that the arrest process disturbed the court, then my response is he has to have done an actionable crime prior to the arrest. He did. Well, allegedly he did. He refused to leave the – to move away from the bar during a court proceeding. Your Honor, respectfully, and I understand the Court's position. I'm not trying to quarrel with you, but I believe that if you look at the – by one way of looking at the video evidence, audio-video evidence, is that Broussard did make three hand gestures, no question, as he walked or walked very quickly toward Hartman. I timed it and correctly represented to this Court that that's a total of five seconds. I don't believe there's any realistic way to say precisely what Officer Broussard was gesturing. They're vague hand gestures, and I think that the Court can look at that evidence and make its own determination. You can certainly interpret it a lot of ways. You can interpret it as sit down, be quiet, don't speak again, but it's just not entirely clear. The conversation that was picked up or the audio that was picked up started with Officer Broussard. Okay. Now, also, I'd like to point out briefly that Barker, when he recanted, that was one of the exhibits, Barker's recantation of his original arrest report, it does reflect that Hartman complained during the arrest process that his arm was hurting, that there was physical pain, and Hartman did complain about the cuffs that were tightening on his wrists. Thank you, Counsel. I take this matter under advisement. We stand in recess until 9 o'clock tomorrow morning. Thank you, Your Honor.